May it please the Court, Sanford Weisburst for plaintiffs' appellants Liqwd and Olaplex. Now the District Court in this case denied a preliminary injunction, but the District Court found that several factors actually favored the grant of a preliminary injunction, and those were irreparable harm in the balance of equities. I'd like to focus on claim construction, which is really where we parted ways with the District Court, and that was the basis for the denial. The claim construction is reviewed de novo by this Court, even on a preliminary injunction motion. Now, the District Court erred in its claim construction, and I'd like to point the Court particularly to page Appendix 6. It's found at the back of the blue brief. The District Court erred by, instead of looking at the ingredient in the context of the actual mixture, instead the District Court asked what the ingredient might be capable of in a different concentration in some hypothetical mixture that's not being studied in the case. And that was error under the plain terms of both the file history, as well as the claim and specifications themselves. I'd like to start with the file history, Appendix 2325 in particular, and that is the most clear definition on this point. And it says you have to look at the actual mixture, not some hypothetical mixture. Specifically it says... Can I double check something? Yes. In one of the... I guess in both of the post-grant review institution decisions, the Board said that this file language is not just the correct construction, but the broadest reasonable one. I believe in the first of the two post-grant review constructions, the Board, the PTAB... It adopted this as the claim construction. It adopted this. It did. It used it in both, didn't it? It did. And I think in that sense, it parted ways with the District Court's reading. For other reasons, we are not principally relying on the PGR grants, including because they were not before the District Court. And under this Court's decision in the Tinnis case, they are not directly relevant on this record, but I'm happy to address them if the Court would like. But they might conceivably be relevant if we agreed with you that the claim construction was incorrect and remanded. Time has passed. Things have happened in assessing whether the preliminary injunction should actually be granted. I know you would like us simply to reverse and order the issue. Yes. There are new circumstances, including rejection of various 112 arguments, rejection of the anticipation argument, institution on obviousness with an interesting caveat that says, hmm, this might be a case of objective indicia being serious. Yes, in fact. And just briefly to address that point, in the second institution decision, the PTAB did institute, of course, but it did not address one way or the other the objective indicia, which we believe points strongly in our favor and could support a likelihood of success here. What's the due date of the usual due date of the Board's decision in the PGR in which it instituted? The final decision? Yes. I'm not sure off the top of my head. I know that the proceeding is ongoing. We plan to contest it. And I think one important distinction in terms of what the PTAB is doing there or has done so far, it instituted to be sure, but it explicitly said we're not addressing objective indicia. And here, the prior art references date from 2004 approximately. The product, Olaplex's product was introduced in 2014. It made a big commercial splash. It was 10 years since the prior art reference. We think the objective indicia are strong in this case. We haven't argued them at length in these briefs, but we think they're strong. But if we were to agree with you on the claim construction issue, there would still be the invalidity issue. And it seems to me that the district court kind of gave that issue the back of the hand by relying on the original grant, which doesn't carry that much weight, and really not understanding the Agalo reference very well. The district court's treatment was somewhat brief. I concede that. I respectfully submit that that was appropriate in light of what the examiner has done, because the examiner had those references, including Agalo, before. That can't be. The district court can say, I'm going to deny. I'm going to assume that there's no possibility of success on the invalidity issue because the examiner looked at the same art. Let's put that aside. Sure. Well, let me address on the merits that point, if I could, for a minute. So Ogawa is a patent, again, it's from approximately 2004, and it's using maleic acid in a marcouche group of about 10 different agents. And the reasoning for its use in that patent is not to protect the hair or to rebuild bonds. It's a chelating agent, which means it's binding to a metal that is part of the solution that the liquid. It's not performing any function along the lines of what it's doing in the 419 patent. Why do you say it's not performing that function? Maybe it's not designed to perform that function, but it would be performing that function, wouldn't it? Well, it's not. Our principal argument on Ogawa is that it's one of 10. It's not singled out. And there's not, none of Ogawa's examples, in fact, involve using maleic acid in the bleaching formulation to protect the hair. So we think... But that's only correct by you say to protect the hair. It does show using maleic acid connection with the bleaching formulation, right? It's actually, I believe the examples do not do so. There's some language in the specification where Ogawa does say that his processes could be coloring or bleaching. I don't believe his examples involve that. But in any event, I would submit these issues were not extensively briefed before this court. And our principal argument to this court, as I mentioned, was let's correct the claim construction. You agree that if we were to agree with you on the claim construction, we'd have to send it back for the district court to further consider validity issues? It's our submission that this court could find that there's non-obviousness on this record. However, at a minimum, I believe this court should send it back so that there could be a further development on those issues. As you mentioned, Judge Dyke, the district court did not give a lengthy treatment to them. And there are objective initia that haven't been considered. Those are, in this court's case law, equally important to read the patent. Well, not for anticipation, it wouldn't be. On anticipation? Not for anticipation. Not for anticipation, but I believe in the first PGR decision, the anticipation argument was addressed and rejected. Well, there's a 112 PGR, the one that was not instituted, and then there's the prior one. And in that one, the key point that this is at 8393 of the appendix that the board relies on about Ogawa is that, in fact, the maleic acid portion of Ogawa is not really combined within Ogawa with the other portion. And so it rejected, and it didn't institute on anticipation. Exactly. What's before the PTAB is the obviousness issue. Again, without- And can I, there's another invalidity contention, which I think, which is, assuming your claim construction is right, would the claims be indefinite based on that? And the district court said, looks likely to me. Let me try to address that point. We think that indefinite is, the district court did suggest that. We think that that's wrong. In terms of this court's case law, I'd like to emphasize the Sonics case, which dealt with a similar situation, which was, is the claim term visually negligible indefinite? Because it relies on the human eye to make a determination. And this court said, no, the human eye is objective. Even though there might be some discretion at the margins, this is enough guidance to a practitioner, to a person of skill in the art, to make a determination whether, in that case, it was a printed page with some hidden codes on it. The question was whether they were visually negligible or not. This court held that's objective enough. In this case, similarly, there's not much of a disagreement, frankly, between the parties as I read the briefs. L'Oreal is pointing to some literature, which supposedly found these dyes that are in question, yellow, blue, and red, in certain high concentrations, can visibly change the color of the hair. You can see this at L'Oreal brief 32. They actually use the words visibly change. Our position is the same. It's just that you look at the product or the mixture at issue. In both cases, you're doing a visual inspection. I think this indefiniteness question is really not that difficult. It's really something that is performed in hair salons every day of the week. When you go in for a hair salon... I think you're right, but on this point, I guess it struck me that indefiniteness is judged from the perspective of an ordinary skilled artisan. The ordinary skilled artisan is not the hairdresser. It's the person in their chemistry lab. In this case, the parties more or less agreed on who a person of the skill in the art was. That was someone who has an undergraduate chemistry degree and has a few years of experience in the hair care industry. In the hair care product creation industry, not in the hair... Not entirely sure. I think it's more or less the same in the end, because it really determined... Someone who works with these products on a day-to-day basis can tell if there's a change in color after they apply it. Maybe the most telling piece of evidence on indefiniteness is L'Oreal's own approach in this case. That can be found at Appendix 5432. L'Oreal did the exact visual test that Liquid and Olaplex are asking be done as claim construction. You take a swatch of hair. You have a control swatch and an uncontrolled swatch where you apply the product. You see whether there's a change. You look at it. The fact that L'Oreal can do it, I think, shows that it can be done. It's not an impossible inquiry. Again, Sonics, I think, we're well within the contours of Sonics. Unless the court has any further questions, which I'm happy to address now, I reserve the rest of my time for rebuttal. Okay. Mr. Mody? Good morning, Your Honors. May it please the court. I'd like to start, Judge Serrano, with the PTAB since you brought that up. That was a preliminary finding by the PTAB on claim construction. What I would like to point, to the extent that this court looks at the PTAB finding, there was actually a later order by the PTAB, and I'd like to point you to that. That's in the PGR 2017-00012. It's unfortunately not in the appendix, Your Honor, because it came later, but since you brought it up, I wanted to bring it to your attention. That's Paper 37 at 8 to 9. What the PTAB did was, there was this issue of secondary considerations. Olaplex tried to seek discovery from L'Oreal in the PTAB, and in that order, they had to show nexus to get discovery from the PTAB on whether L'Oreal's U.S.A. products infringed or not. They had to show the nexus that was required under secondary considerations. What the PTAB said with respect to this issue of the hair coloring agent, they said, quote, it's a binary determination. Either the product, the hair coloring agent, is in the mixture or it's not in the mixture. Obviously, as the court pointed out, this is a preliminary determination by the PTAB on that issue. We do think, if you look at- I'm not understanding. What's the claim construction they gave? Your Honor, the claim construction, they did adopt the construction as a preliminary finding what was in the prosecution history. But the issue of indefinite- What does that mean? Sure, Your Honor. The construction that they found was the one that's in the file history. They said that's at 2325, that Olaplex is advancing hair. My point is, even under that construction, what the PTAB found in that order that I pointed you to, they said whether or not a hair coloring agent is or is not in the mixture is a binary determination. That's precisely correct. We think the district court did get this right on infringement from a plain and ordinary meaning construction. As Your Honors know, they had advanced two theories, plain and ordinary meaning and a lexicography-based construction. With respect to the plain and ordinary meaning, we think the district court did get it right because whether a colorant is or is not a hair coloring agent depends on the properties. And with respect to the- Depends on the properties? Depends on the properties. Does that include the property of the amount that's being used? Your Honor, in this case, I think there was enough evidence, I believe Your Honors alluded to it earlier, that the accused yellow, red, and blue dyes in the accused products do color hair. Well, if you dumped a gallon of it on my head, it would color even my hair. Sure, Your Honor, but you don't need a gallon. Our point was the court- I thought there was some number in the record about, I don't know, you have to multiply by 7,000 or some quite large number, not like two or three, to get a concentrate, an amount that would actually color hair. Sure, Your Honor. And I think the number that you're thinking of is 5,000, independent on the dye. But I think the issue here is we have to look at the claim language. I think it's dispositive. If you look at the claim language- Isn't the issue here whether the yellow five, red four, the blue one, whether or not they are hair coloring agents and not necessarily whether they color hair? I believe, Your Honor, I would quibble just a bit, but I think I agree with you, and here's why, and this is the point that I was going to get to. If you look at the claim, the claim here says you have a method of bleaching hair. You mix the first formulation with an active agent formulation. Then it has a negative limitation. It says, when the mixture does not contain a hair coloring agent, which precisely goes to your point, Judge Reynaud, what they want to do is they want to say, well, the accused products do not color hair. That's not the question. The question is whether the mixture includes a hair coloring agent, and it's undisputed it does. That's a chemistry issue, right? That's right, Your Honor. That's exactly right. And there's enough- I'm sorry. I mean, I think I understand what the difference between you is, which is exactly what your friend on the other side said it was. The very same composition can be a hair coloring agent or not, depending on how much of it you have when you put it on the hair. And your view is, one molecule of yellow 5 or 3 or whatever it is, is a hair coloring agent. If you put that on the hair, or even if it wouldn't color hair if you put it on the hair, the one molecule, but if you had 50 million molecules, it would. That makes the one molecule in the composition a hair coloring agent. Your Honor, I think, again, you have to start with the claim language. Here it says, the claim language says, well, the mixture does not contain a hair coloring agent. And I think what's dispositive here is a testimony from their expert, and in fact, I think it applies to direct infringement. We asked Olaplex's expert, Dr. Borish, this is at A6817 of the appendix. We asked him, we said, Dr. Borish, if you had a semi-permanent hair colorant, which he even agrees would be a hair coloring agent in the context of the 419 patent. We asked him, we said, what if you change the concentration of it? Would it still be a hair coloring agent or a hair colorant? His answer was yes. And I think that's fatal to their argument here that the concentration doesn't matter. I'm not sure if it matters, but did he say if you change the concentration so that there was, I'll exaggerate here, one molecule? Your Honor, it never got to that point. Right. So you could change the concentration from, changes it a lot to changes it a little bit. Your Honor, I think this goes back to Judge Reyna's point. Because these are, obviously these are well-known ingredients, right, yellow, red, and blue dyes. We have submitted plenty of evidence in the record. If you look at our red brief 31, we cite plenty of evidence. Even their expert admits that these dyes do impart color, albeit he would say you need higher concentrations. I think our point is that when they, even their expert agreed that a semi-permanent colorant, which again, according to them, is a hair coloring agent. If you change the concentration, he didn't limit it in any way. He said it would be a hair colorant regardless of the concentration. Again, that's at 860, 870. But even if you go past the direct infringement issue, the plain and ordinary meaning, I think they have a huge problem, Your Honor, which you were alluding to under their lexicography based construction. What happened here was in their opening PI motion, they started with a plain and ordinary meaning construction and then they switched to a lexicography based construction in their reply brief. If you look at it, you have to understand that what they're saying with their visual inspection requirement, what they want to inject into the claims. I'll start by pointing out, even we asked Dr. Hawker, first of all, whether this definition that they're purporting in the file history that they presented, what did he think of that definition? He said it was not the best description. That's at 82189. The claims here, the specification, the prosecution history, other than their statements, there is no support, as Judge Robinson correctly found, that there's no support for the notion that you actually apply this method and then you do some post hoc determination to figure out if what you applied to the hair had a hair coloring agent or not. There's nothing in the specification. In fact, if you look at the claims, the claims include other agents. It includes a bleaching agent as part of the bleaching formulation. It includes an active agent. Nowhere in the claims or the specification do they say, well, you have to apply to determine if the bleach, for example, lightens the color of your hair. What they're left with are these self-serving prosecution statements that were made years, two years after the original filing of the original application. I'll also point out in the gray brief at one, because I just want to make sure the court has this right, the date of their amendment is wrong. They said they made that amendment on March 31st. That's not correct. That amendment was made months later in an amendment in response to an office action. This court certainly embraces lexicography-based constructions, but if they're not supported by the specification, this court has time and again held that can't be, that's not correct. I'll just quickly address before I turn to the indefiniteness issue. Turning to the extrinsic evidence, they like to point to our lab notebooks and say, look, well, L'Oreal did it. As your honors knows, from a claim construction perspective, it's black letter law that they cannot look at. I mean, surely we must be able to look at the prosecution history to interpret the claim language. Sure, your honor. I have no problem with that, but I think as soon as you start looking at, they'll want to look at our infringing evidence and say, look, oh, L'Oreal did a visual inspection, so it's fine. That's where I think, let me actually get to the indefiniteness issue. But the claim language, if construed in the light of the prosecution history, that prosecution history helps them, right? Your honor, that's their position. Why doesn't it help them? Let me explain why, your honor. So we're... Would you like me to point... What page are we talking about in the prosecution history? So we're talking about 2325, your honor. Which volume is that? It's volume one. Volume one. What page again? Your honor, 2325. Let me know when you have it. Yep. Okay. So it's right in the middle. You can see that. It says, the term hair coloring agent refers to a colorant or pigment that is customarily used in hair care products, which changes the color or tone of the hair as it is applied to based on visual inspection. In contrast to agents that color the product but not the hair. Sure. And then they go on and make that statement. And as Judge Taranto, that's the statement that they like to point to. And the district court certainly had all of this before it and still rejected it. And we think it was right. It was the right conclusion on both the plain and ordering meaning and the lexicography based theory. And let me explain why. So Judge Dyke, these statements in terms of the visual inspection, the requirement, what they want you to do is they want you to perform the method and then do some sort of visual inspection after some undetermined amount of time under some unspecified conditions and determine whether the hair coloring agent is a hair coloring agent or not. And this gets to the indefiniteness issue that Judge Taranto, you were pointing to. What that does here is if you look at the testimony, we asked Dr. Heffer, Dr. Borish, their expert, and that's at appendix. Well, wait, wait. Forget about the testimony. Let's stick with the... Sure, Your Honor. ...the prosecution history here. Doesn't this help them in terms of their claim interpretation? Your Honor, again, they want to point to this claim construction and say this, this is it. This is a claim construction. And as I pointed out, Your Honor, certainly parties or penalties are feel, they can use lexicography-based definitions in their prosecution history. But what I want you to do is tell me why this doesn't help them. Why does this help you as opposed to... Okay. Sure, Your Honor. So if we look at this construction and as Judge Robinson applied it, it says the term hair coloring agent refers to a colorant or pigment that is customarily used in hair care products which changes the color or tone of the hair as it is applied based on visual inspection. So if you stick with that definition, if you look at our hair colorants, they are customarily used in hair care products. And if you look at the definition, the plain meaning of this definition, it says it's a hair coloring agent that refers to a colorant or pigment that is customarily used. So in our view, that's required, that it has to be customarily used in hair care products, which is the case here. Then it says, which changes the color or tone of the hair it is applied to based on visual inspection. And what Judge Robinson did in this case when she was applying the plain and ordinary meaning of that phrase, she said, if I look at these dyes, the yellow, red, and blue dyes in the accused products, it's undisputed that they do color hair. They have the properties of coloring hair, Judge Reynolds, going back to your point. And that's where she, that's why she agreed with us that there could be no infringement even under the... If it's customarily used to color, then it's a hair coloring agent. That's what those words say, Your Honor. So, and also again, Your Honor, you have to look at the claim. If you look at the claim... Even if it's not used that way in the product. Your Honor, again, I think you have to look at the claim. So if you look at 2321, Judge Dyke, which is right next to that page you're looking at, it actually has the claim there. So if you look at the claim, it says, where in the mixture does not contain a hair coloring agent. So what they want to do is they want to say, you apply the mixture to the head and then determine whether something is a hair coloring agent or not. But that's not what the claim requires. It requires a hair coloring agent. What they're saying is it has to be in concentrations that would color, customarily color hair. But Your Honor, that's not supported by their specification at all. The specification only recites hair coloring agent once. And it either excludes it or includes it. It does not give you any concentration. And I'll give you the site. It's 876 of the appendix. And I think the fundamental point here is that the claim is rendered indefinite if you go with their lexicography-based construction. If I could just give you one example. We asked... Their expert said, well, whether or not something is a coloring agent, if you wash it, if it washes out after one wash, it's not a hair coloring agent. And that's at A180, paragraph 39. And then I'll also point the court to A6812, where their expert, we asked him about this washing requirement. We said, well, okay, what if after two washes, if it washes out? What if it's three washes? And you could tell he had trouble answering those hypotheticals. So the bottom line here is that the same concentration of hair colorant may be a hair coloring agent in one instance, but not in the other. For example, for damaged hair versus undamaged hair. We think this is a classic case where they failed to inform with reasonable certainty those skilled in the art about the scope of the claim. And unless the court has any questions, I see my time's up. Okay. Thank you, Mr. Nari. Thank you. So we just heard from my adversary that the specification provides no support for the prosecution history. That's incorrect. Appendix page 76, column 11, makes a very important distinction between a, quote, dye, unquote, and a, quote, hair coloring agent, unquote. Those are two different things. And how do we know which it is? We know based on the concentration. So we actually see- Although, is he right that the specification does not talk about concentrations, at least as to those terms? It must, as to the others, right? Isn't there some claim element about that? Well, let me- Yes, Judge Sharanza, that is correct. Active agent is actually defined in terms of a numerical concentration. Hair coloring agent, there's no numerical requirement associated with it. It's our submission that you have to do this visual inspection test, which does not involve applying it, then washing it, and then looking. You apply it once, and then you look. No washing. Regardless of how that visual inspection comes out, that doesn't answer the question as to whether there's a hair coloring agent or not in the formulation. There can be a hair coloring agent in the formulation and yet not affect the hair, because there's not enough there. It's not concentrated enough. We respectfully disagree. We think the patent, again, page 76 in the specification, column 11- It kind of reminds me, I was thinking of a hot air balloon, and approaching a hot air balloon says to another, there must be a lot of hot air inside that balloon, and the other guy says, no, there's not, because the balloons are not flying. So here, there can be an agent in the formulation, it doesn't have to color the hair, it doesn't have to fly in order for the agent to be in the formulation or not. I respectfully disagree, Judge Ray, and let me try to explain why. If it were present in a low concentration, not sufficient to color the hair, it would be, as the patent calls it, a dye. It would not rise to the level of a hair coloring agent. The patent, maybe in the abstract, in the hot air balloon example, I absolutely understand the point, but in the context of this patent, it's making a distinction between a dye and a hair coloring agent, and in that same column, it refers to these sorts of ingredients, dyes, hair coloring agents, according to their form of use, or function, and function requires looking at what they do, not just whether they're present, and I want to emphasize here, we're not really talking about a gray area, I mean, these dyes, and I'm going to call them dyes because I think they are, in this product, these are ubiquitous in all sorts of shampoos and conditioners that you could buy at the drugstore. No one understands them to color hair, they don't color hair. In a very extreme, large concentration, they could color hair. But that's not what we're talking about, and in fact, it would be antithetical to the function of the Olaplex product, or the L'Oreal product, for it to contain something that colored hair. These products are designed to be versatile, to protect hair, whether it's in a bleaching treatment or some other context, including just applying the product itself. If one had a real hair coloring agent in this, it would really alter whether the product could work in a bleaching formulation, which is the claimed process, right? Because bleaching removes color from hair, and if you had a coloring agent that really was a coloring agent in this product, it would sort of counteract what your goal is, which is to remove color. Instead, you'd be adding color. So function, which this court has considered in this sort of situation in cases like MedRAD site interoperatives, is a very important point. I'd like to briefly address the question of the Boerish Declaration. In fact, Boerish made the exact point about concentration. This is at page 6817, page 90 of the deposition, lines 19 to 25. He talks about concentrations, manipulating the conditions, comparing apples to oranges. He did not concede anything like the L'Oreal interpretation. And the prosecution history was not self-serving. It was a very important moment in the prosecution history when the word hair coloring agent was added to the patent for the first time. As I've explained... Okay. We're out of time. Thank you, Your Honor. Okay. I thank both counsel.